## In re GILMORE.

(First Division. Juneau. May 15, 1915.)

No. 11, Bankruptcy.

1. BANKRUPTCY ⊚⟀54—INSOLVENCY.

At the time the petition of creditors was filed to declare the debtor a bankrupt, his assets amounted to $9,000, and his debts to but $8,679. *Held*, since his assets exceeded his liabilities, the court finds that the solvency of the defendant has been proved, and the petition to adjudge him a bankrupt is dismissed.

2. BANKRUPTCY ⊚⟀54—EXEMPTIONS—HOMESTEADS.

In marshaling the assets and liabilities of an alleged bankrupt's estate, to determine whether he is solvent or insolvent, there shall be no allowance or deduction made from the assets on account of a homestead or other exemption, since the whole estate must be considered upon the theory that the defendant has sufficient property with which he may pay his debts, if he chooses to do so.

In this matter a petition was filed by certain creditors seeking to have one P. F. Gilmore adjudged a bankrupt. The petition was filed on November 27, 1914, and it alleges, in substance, that on July 28, 1914, the said P. F. Gilmore transferred, conveyed, and concealed his property with the intent to hinder, delay, and defraud his creditors. The petitioning creditors appeared by their attorneys Messrs. Gunnison & Robertson, and the defendant appeared in his own proper person. Evidence was heard in behalf of both parties.

At the hearing the court permitted the defendant to amend his answer, so as to allege that on the day the petition was filed he was solvent.

Gunnison & Robertson, of Juneau, for creditors.
P. F. Gilmore, in pro. per.

JENNINGS, District Judge. Subdivision "b" of section 3, chapter 3, of the Bankruptcy Act of 1898 (30 Stat. 546 [U. S. Comp. St. 1916, § 9587]), provides:

⊚⟀See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of said act," etc.

"c. It shall be a complete defense to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this act, at the time of filing the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed, and under said subdivision 1 the burden of proving solvency shall be on the alleged bankrupt."

"The first subdivision of this section" provides that it is an act of bankruptcy for a debtor—

(1) to convey, transfer, conceal or remove any part of his property with intent to hinder, delay or defraud creditors.

Thus it will be seen that, if the bankrupt proves that he was solvent at the time of the filing of the petition, the proceedings must be dismissed. The question, therefore, in this case is: Was the alleged bankrupt insolvent on the 27th day of November, 1914?

In order to determine this, we must have reference to the definition of insolvency which is contained in section 1, chapter 1, subdivision 15 of said act, where the language is as follows:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." U. S. Comp. St. 1916, § 9585.

Let us balance, therefore, as of November 27, 1914 (the date of filing the petition of involuntary bankruptcy in this case), the liabilities of the alleged bankrupt against his then assets, in order to see whether or not he was then insolvent.

As to his assets: The evidence shows that on that date Gilmore owned, exclusive of the property which he is alleged to have transferred to hinder and delay his creditors, the following real estate, to wit: Lot 11, in block 13, and lot 6, in

block 19. The former is his home property, and the latter is his business property, and is known as the "Market." In order to establish the value of these two pieces of property, the plaintiff introduced two witnesses, namely, Mr. Powers and Mr. Deppe, and the defendant also gave testimony. The evidence shows that Mr. Powers is a broker in the real estate business, and is a man of intelligence and experience in the matter of valuing property. He places the value of the home property at between $3,500 and $4,000, and Mr. Deppe places it at $3,500. The court finds that it is probably worth $3,-750.

The market property was valued by Mr. Deppe at $4,500, and by Mr. Powers at $5,000, and by the defendant at $7,-500. The court accepts Mr. Powers' estimate.

That would make the value of the two pieces of property $8,750.

. The defendant also produced a list of accounts, amounting to about $1,500, which he said was due him and which he considered as good. The court is not disposed to accept his statement that all these accounts are good, but it has no doubt that on November 27, 1914, some of them were good. From the evidence, I think that said accounts are worth not more than $250.

The above are all the assets shown to be possessed by the alleged bankrupt on November 27, 1914. They amount to:

Lot 11, block 13.........................................$3,750.00
Lot 6, block 19.......................................... 5,000.00
Accounts  ............................................... 250.00
                                                        _____
    Making a total of................................$9,000.00

So that, allowing as an asset only one-sixth of the par value of the outstanding accounts, and placing the value of the real estate at the figure given by plaintiff's witness Powers, the assets amount to $9,000.

But it is contended that the full value of the home property should suffer a deduction of $2,500, because, under our exemption laws, that much is exempt from execution as a homestead, and that raises the inquiry as to whether or not, in considering the question of the solvency or insolvency of an

alleged bankrupt, the bankrupt's exemption should be deducted from the value of the property which he has.

This inquiry is answered in the negative in the case of In re Baumann (D. C.) 96 Fed. 946, and in the case of In re Hines (D. C.) 144 Fed. 142. As the latter is a case from Oregon, decided by Judge Wolverton, then judge of the United States District Court, but now a member of the Circuit Court of Appeals, it is of peculiar interest in this jurisdiction. The language of Judge Wolverton in deciding that point is as follows:

"Nor should property exempt by the state law from execution be deducted from the debtor's assets in ascertaining whether they are, at a fair valuation, sufficient in amount to pay his debts. This has been directly decided in the case of In re Baumann (D. C.) 96 Fed. 946. The question came up on a construction of such subdivision 15 of section 1 of the Bankruptcy Act. Mr. Justice Hammond says, relative to the provision: 'This is probably as arbitrary  *   *   * as is to .be found in the statute. It was intended to wipe out, as with a sponge, all that confusion which is to be found in previous bankruptcy statutes and decisions as to the meaning of the word "insolvency." It had also the more comprehensive purpose of designating with absolute fixity the only class of persons upon whom the involuntary features of the bankruptcy statute should operate, namely, those whose property was not sufficient in amount to pay their debts. It does not proceed upon any theory that the debts will in fact be paid by the appropriation of the property to that end, nor upon the theory that as a matter of fact it is available for compulsory payment, but upon the theory that the defendant has sufficient property with which he may pay his debts if he chooses to do so.  *   *   * Moreover the language of the above-quoted section is explicit. There is not the least ambiguity about its meaning. It leaves no room for any construction by implication or otherwise. Obviously, it was intended to give us a rule in mathematics, the terms of which are absolute.' So arguing, and in further consideration that the act has made one exception, and one only, that of property conveyed or concealed with intent to defraud, it was concluded that it was clearly not the intendment of Congress to make another exception in relation to exempt property. The reasoning of the learned justice is strong and cogent, and his conclusion irresistible. The language of the act is very plain, without ambiguity or double meaning, and, when it is found that one exception is expressly made, it excludes, by almost absolute inference, a deduction that another was also intended, so that, upon a simple construction of the act, it is manifest that it was not the purpose or intendment of the lawgiver that exempt property should be deducted in ascertaining the amount of the debtor's property at a fair valuation."

Now, taking up the liabilities:

The testimony shows that on said date his unquestioned debts were as follows:

| | |
|---|---:|
| Miners' & Merchants' Bank, one note | $ 792.79 |
| "            "         "    " | 786.67 |
| "            "         "    " | 514.16 |
| Charles M. Taylor, two notes | 1,117.48 |
| Charles H. Cosgrove, four notes | 2,254.24 |
| Greenbaum, Weil & Michels | 234.21 |
| Pacific Coast Syrup Company | 84.10 |
| Albers Brothers Milling Company | 29.20 |
| Boyd Rubber Company | 93.75 |
| Bornstein & Son | 115.90 |
| Godwin & Company | 339.51 |

J. B. Powels & Company—
Amount of judgment.........................$575.74
Interest thereon from April 3, 1914, to November 27, 1914, at 8 per cent.................. 29.96
Costs ..................................... 35.00

| | |
|---|---:|
| | 640.70 |
| Electric Light Company | 89.35 |
| Independent Cracker Company | 64.07 |
| Fischer Flouring Mills Company | 62.80 |
| J. W. Fales Paper Company | 62.79 |

Making a total of................................$7,281.72

In addition to the above let there be counted as liabilities the reasonable attorneys' fees of—

Mr. Cosgrove, which were properly chargeable on the two notes which were due on said date.........$150.00
Also reasonable attorney's fees which had accrued on Mr. Taylor's note............................ 100.00
Also reasonable attorney's fees which had accrued on one note of the Miners' & Merchants' Bank, for $500 ..................................... 100.00    350.00

$7,631.72

Beside that, there are the following claims of indebtedness disputed by the alleged bankrupt:

| | |
|---|---:|
| Agen & Company | $ 85.43 |
| Pacific Net & Twine Company | 282.95 |
| Townsend Creamery Company | 207.96 |
| Turner & Pease | 429.56 |
| Brown & Bigelow | 41.60 |

Making a total of................................ 1,047.50

Making a grand total of liabilities, according to contention of petitioners, on November 27, 1914, of................$8,679.22

As the assets exceed the liabilities by more than $300, the court finds that the solvency of the defendant has been proven, and it concludes as a matter of law that the petition to adjudge the defendant a bankrupt should be dismissed.

Let findings be prepared accordingly.